## Case No. 16,054.

### UNITED STATES v. The PLANTER.

[Newb. 262.] [1]

District Court, D. Missouri.   March, 1852.

PROSECUTIONS FOR PENALTIES—INFORMERS—LIA-
BILITY FOR COSTS—SHIPPING—ENROLLMENT
AND LICENSE.

1. The eighth section of the act of 28th of February, 1799 [1 Stat. 626], in relation to prosecutions upon a penal statute, by an informer, contemplates an action in the name of the informer alone, as well as in the name of the United States, to the use, in whole or in part, of an informer.

2. If the informer, for whose use the suit is prosecuted, in whole or in part, is not an officer of the United States, the United States cannot be liable for costs in the cases mentioned in the said eighth section.

3. The informer is liable, although the United States may be a party on the record.

4. The court may require an informer to give security for costs, and in case of refusal, strike his name from the record.

5. An enrollment and license, duly executed, does not require delivery to give it validity.

6. Where a license was duly executed, sealed, signed, dated and numbered, but not delivered until a month thereafter, held, that it was a valid license from its date.

In admiralty.

John D. Cook, Dist. Atty., and Lyman D. Norris, for the United States and informer.

Benjamin F. Hickman, for owner of boat.

WELLS, District Judge. A libel was filed against the steamboat Planter for a violation of the act of congress approved 7th July, 1838 [5 Stat. 304]. "To provide for the better security of the lives of passengers on board of vessels propelled in whole or in part by steam." The libel states, that "the attorney of the United States for the said district of Missouri, upon the information on oath of Peter V. Skillman, now here in the name and on behalf of the United States, and on behalf and to the use of the said Peter V. Skillman, gives the court to understand and be informed," &c. An affidavit is filed with the libel by said Skillman, which sets forth that "in the name and on behalf of the United States of America, as well as in the name and on behalf of Peter V. Skillman, who presents to the court here this information, now here giveth the court to understand and be informed," &c. The second section of the above recited act provides that a fine of $500 shall be paid by the owners of any steam vessel which navigates the rivers, &c., without first obtaining a license therefor, "one-half for the use of the informer."

On filing the libel, no security for costs was given by the informer, and the owners, after filing their answer, moved the court for a rule on the informer to give security for costs. The United States appeared by the district attorney, and the informer by

1 [Reported by John S. Newberry, Esq.]

his proctor. The motion was opposed by the proctor of the informer.

By the 8th section of the act of 28th February, 1799 (1 Stat. 626), it is provided, that "if any informer on a penal statute, and to whom the penalty or any part thereof, if recovered, is directed to accrue, shall discontinue his suit or prosecution, or shall be non-suited in the same, or if upon trial judgment shall be rendered in favor of the defendant, unless such informer be an officer of the United States, he shall be alone liable to the clerks, marshals and attorneys for the fees of such prosecution; but if such informer be an officer whose duty it is to commence such prosecution, and the court shall certify there was reasonable ground for the same, then the United States shall be responsible for such fees." See, also, the 5th section of the act of 8th May, 1792 (1 Stat. 277).

The statute contemplates not only prosecutions in the name alone of the informer, but also those in the name of the United States to the use in whole or in part of an informer, "to whom the penalty, or any part thereof, if recovered, is directed to accrue. If such informer be an officer whose duty it is to commence such prosecution, and the court shall certify there was reasonable ground for the same, then the United States shall be responsible for the same." It will also be seen that in case of an informer who is not an officer (which is the case here), the United States are not liable, and therefore if the informer be not liable, no costs can be recovered, no matter how malicious or vexatious the prosecution may be. The Antelope, 12 Wheat. [25 U. S.] 559. "It is a general rule (says the supreme court) that no court can make a direct judgment or decree against the United States for costs and expenses in a suit to which the United States is a party, either on behalf of any suitor or any officer of the government.

I think it appears from the above that an informer is liable, although the United States may be a party on the record, and also that the United States are not liable in this case. Can the court require him to give security for costs? 2 Browne, Civ. & Adm. Law, 356. "If both parties appeared on the appointed day, each was to give security stipulatio, or satisfactio; the plaintiff that he would prosecute his suit and pay the costs, if he lost his cause; the defendant that he would continue in court, and abide the sentence of the judge, i. e. bail to the action." This was the ancient civil law. The same practice prevails in the admiralty courts, on the instance side, or in other words in cases like the one under consideration. Id. 410, 411; Conk. Adm. 463, 464.

"In a suit in rem both parties are actors." Serg. Const. Law, 234. "All persons interested in the cause of action, may be joined as libelants." Dunl. Adm. Prac. 95. In this case the informer has an interest, the same as that of the United States, as he receives

half the penalty, that is $250. It will be seen by reference to that part of the libel and affidavit above set forth, that he is made a party—a party on the record—and would be entitled to his part of the penalty when brought into the court by the marshal, and a decree or judgment would be given against him for costs if unsuccessful. His interest is separate and distinct from that of the United States, each being entitled to $250.

But to settle all controversy in regard to the matter, and for the information of all concerned in similar suits, the court made a general rule requiring an informer to give security for the costs when the libel is filed, and also providing that if not given when the libel was filed. a rule might be made on him to give such security; and if not given, that he should not be further recognized by the court as informer, and that his name should be stricken out, and that he should receive no part of the fine or penalty. Under this rule he was required to give security for costs. and being in court and declining to give such security, the rule was enforced against him. It will be seen that this proceeding leaves the United States free to prosecute either in the first instance, without an informer, or to prosecute after his name is stricken out. The necessity of establishing such rules and practice, and requiring security from informers, became manifest during the present term of the court. Eleven libels were filed against steam ferry boats for this term, by informers, without security for costs, and the boats arrested. No evidence was offered or alleged to exist. showing that they had been employed in any navigation other than that of ferries under licenses from state authority.

In the case of U. S. v. The James Morrison [Case No. 15,465], this court held that ferry boats were not liable for the penalties imposed by the act of 1838, above cited; the case was taken by appeal to the circuit court, and there affirmed. The opinion of this court in the case of U. S. v. The James Morrison [supra] was published, as was also the decision of the circuit court, affirming its judgment.

The circuit court is the court of last resort in such case. In the face of these decisions these eleven suits were brought. The suit then proceeded in the name of the United States alone. The libel was for running the boat without a license. The answer of the owners set up and exhibited a license upon its face, good in all respects. It appeared in proof that the owners had executed their bond according to law, and applied for license after the enrollment of their boat, which license was made out on the books of the office, by the surveyor and inspector, signed, sealed, dated and numbered; and the same on a separate sheet, also signed, sealed, dated and numbered. When the owners called at the office afterwards, it

appeared that there had been no account or payment of the hospital dues: that the account could not at that time be made out, as the boat had, a short time before, been sold and transferred to the present owners, who did not know how many hands had been employed by the former owners, nor how long the boat had run, both of which it was necessary to know and state in writing: that a person rendering a false account was subject to a fine: that the former owners were absent, and therefore the information could not be obtained. Under these circumstances, the surveyor declined handing over the paper made out on the separate sheet, but gave the owners permission verbally to make the voyage they were prepared for; and on their return, the former owners being still absent, they made another voyage. For these two voyages this libel suit was commenced. On the day the writ was served, but after the service, the paper was delivered. The surveyor was not bound to grant license until the hospital dues were paid.

He states in his evidence that the enrollment and license were duly executed on the day they bear date, but the certificates were not delivered until afterwards; thus, treating the record in his office as the enrollment and license, and the papers delivered as evidence thereof. Be this as it may, he states positively, that the bond was given and the license was duly executed, was sealed, signed, dated and numbered; and the only question which can be raised is, "was delivery of the license necessary to give it validity?" He could grant a license before the hospital dues were paid, and the effect of which perhaps would be to make himself personally responsible for them; and this was his own understanding of the matter, as appears from the evidence of the chief clerk in his office.

A deed is an instrument executed by a private citizen, and is or was formerly only known to be his act and deed, because he delivered it as such. He has no public seal by which it can be known, and anciently when this law was established, not one person in a hundred, perhaps, could write his name; and his private seal was the impression of his tooth, or some other impression equally unknown to the public. Delivery is therefore essential to give it validity; and it takes effect only from delivery. 2 Black. Comm. 306. It is not thus in regard to the acts of public officers, attested by public seals, and recorded in public records in public offices.

Where is the law to make delivery essential to their validity? I confess I have never seen such law, and certainly none was produced or cited. In the case of Marbury v. Madison, 1 Cranch [5 U. S.] 177, 1 [Pet.] Cond. R. 273, the supreme court of the United States says: "But in all cases of letters patent, certain solemnities are required by law, which solemnities are the evidence of

the validity of the instrument. A formal delivery to the person is not among them. In cases of commissions the sign manual of the president and the seal of the United States are those solemnities. This objection does not touch the case."

This was said by the court in answer to an objection, that delivery was essential to give validity to a commission. I have not been able to discover any difference which can be material in this respect, between a commission and a license; neither of them is a deed made by a private citizen, which can only be known to be his act, by his having delivered it as such. Both are acts of public officers, in their official capacity; both have their sign manual and public seals, and both are recorded in public records in public offices; both are letters patent, or of the nature of letters patent. Blackstone (2 Comm. 346) speaking of letters patent, says: "These grants, whether of lands, honors, liberties, franchises or aught besides, are contained in charters or letters patent, literal patentees, so called because they are not sealed up, but exposed to open view, with the great seal pendent at the bottom, and are usually directed or addressed by the king to all his subjects at large." This is precisely the case with commissions and licenses. They are both grants. A commission grants the right to hold and discharge the duties of a certain office. A license grants authority to do a particular thing—in this case to carry on the coasting trade. They are both open letters addressed to everybody and under public seals.

If an original license were lost, could a copy from the record be evidence? Certainly not, without proof that the original was delivered, if such delivery be necessary to give it validity; yet such copy is, I believe, uniformly received in evidence without such proof of delivery.

Let us see the effect in the present case, of the doctrine that a license is invalid until delivered. It was not delivered until one month after it was executed. The bonds executed by the owners are conditional that the boat shall not, during the continuance of the license, be engaged in any trade whereby the revenue of the United States shall be defrauded, and shall not be used for any other vessel, or in any other employment than as specified in the license. They were not in force until the license took effect. If suit were brought for a breach during the month, the action would be defeated, by showing that the license had not been delivered. The license is granted for one year. If it have no validity until delivered, that would be considered its date, and it would run one month into the next year. If it commenced at its date, but yet was inoperative, it would be a license for eleven months only. The law requires that a record should be made of the licenses granted. This record

would be false, if the license did not take effect for one month after being granted and recorded. The law also requires the licenses to be numbered, commencing with the year, and copies sent to the register of the treasury. Both the numbers and copies sent would be false if the license had no validity until delivered. If a suit were brought for running without a license after the expiration of a year from its date, it might be defeated by showing that the license commenced only from delivery, and the year from that time had not expired. The effect would be to falsify the record of the surveyor's office, and the records of the treasury department, and introduce confusion and uncertainty into all the public business relating to our commerce and navigation.

If, on the other hand, the hospital dues be not paid, the surveyor is not bound to grant the license; if, however, he should do so, he may, perhaps, become responsible for them, but the non-payment would not avoid the license, and the owners would still be held liable for them.

For the above reasons, the court orders and decrees that the libel be dismissed, the bond given by the owners canceled, and the informer pay costs up to the time when his name was stricken out as informer.